## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### CASE NO. 1:22-CV-21456-MORENO/GOODMAN

SUNRISE OF CORAL GABLES PROPCO, LLC,

      Plaintiff,

v.

CURRENT BUILDERS, INC.,

      Defendant.

_____/

### ORDER ON PLAINTIFF'S MOTION *IN LIMINE*

In this breach of contract case, Plaintiff Sunrise of Coral Gables Propco, LLC

("Plaintiff") filed a motion *in limine* to prevent Current Builders Inc. ("Defendant") "from

offering evidence or argument regarding: (1) alleged 'construction industry'

understandings, including alleged understandings regarding the meaning of the word

'Work'; (2) 'the date the building permit was issued'; and (3) Defendant's claim that

Plaintiff breached the Agreement." [ECF No. 43 ("the Motion")]. United States

District Judge Federico A. Moreno referred to the Undersigned any and all pretrial

matters. [ECF No. 40].[1] Defendant filed a response [ECF No. 49], and Plaintiff filed an

optional reply [ECF No. 55].

---

[1]     Judge Moreno's referral Order specifically requires the Undersigned's ruling to be consistent with 28 U.S.C. § 636(b)(1)(A) and Rule 1(c) of the Local Magistrate Judge Rules, both of which apply to non-dispositive motions. This, in turn, means that the Undersigned needs to issue an Order, rather than a Report and Recommendations (which would be for dispositive matters).

For the reasons discussed below, the Undersigned **grants in part and denies in part** Plaintiff's motion.

## I.   Factual Background

Plaintiff owns a six-story assisted living facility. [ECF No. 20]. As the owner of the facility, Plaintiff entered into a $32,570,188.00 Guaranteed Maximum Price Construction Agreement.[2] The Agreement set forth the parties' respective rights and obligations, including claim and dispute procedures. In it, Defendant agreed that in the event of a dispute between the parties, it would continue working on the project subject to its right to submit a claim.

The Agreement contemplated a Limited Notice to Proceed in June 2021 and a full Notice to Proceed in December 2021. Following the Limited Notice, Plaintiff alleges, Defendant failed to timely pursue subcontractor and vendor awards. In December 2021, Plaintiff did not issue the Notice to Proceed because of the delay in receiving the necessary building permit from the City of Coral Gables.

The following month, Defendant sent Plaintiff a letter regarding escalating costs on the project, asking for an additional $2.5 million in a Change Order. After some initial discussions about its request and after Plaintiff responded to the request with a letter requesting additional information about the proposed increase, Defendant terminated the

---

[2]      The contract price could be adjusted by approved change orders.

Agreement (without responding to the letter asking for an explanation about the Change Order request).

Plaintiff claims that Defendant unlawfully terminated the Agreement on February 2, 2022, alleging that Defendant "abruptly changed its approach and terminated the Agreement and abandoned the project on February 2, 2022, arguing for the very first time that the entire Work had been suspended since October 2, 2021. SOF ¶¶ 38-39." [ECF No. 28-2, p. 7].[3]

On February 8, 2022, Plaintiff issued a seven-day notice to cure, as set forth in the Agreement. Defendant failed to cure and did not return to work on the project. Approximately a week later, Plaintiff terminated Defendant for cause. In July 2022, Plaintiff entered into a subsequent agreement with a replacement contractor, Winmar.

## II.  Legal Standards and Analysis

Plaintiff's Motion requests three things: (1) that Defendant should be excluded from offering evidence regarding alleged construction industry understandings; (2) that Defendant should be excluded from offering evidence regarding the date of the building permit's issuance; and (3) that Defendant should be excluded from alleging that Plaintiff

---

[3]      ECF No. 28-2 is the memorandum Plaintiff filed in support of its Motion for Partial Summary Judgment, which is pending. The Undersigned needed to rule on the instant motion *in limine* **before** ruling on Plaintiff's summary judgment motion (and before ruling on Defendant's competing summary judgment motion, [ECF No. 29]).

breached the agreement. [ECF No. 43]. The Court must first determine the applicable law before beginning its analysis of Plaintiff's requests.

A federal court sitting in diversity "appl[ies] state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965). In cases involving contracts, "Florida courts will first look to any choice-of-law provision in a contract or will otherwise apply the law of the state where the contract was made." *ECB USA, Inc. v. Chubb Ins. Co. of New Jersey*, 587 F. Supp. 3d 1205, 1210–11 (S.D. Fla. 2021) (citing *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995) ("When resolving conflict-of-laws issues in contract actions, the Florida Supreme Court has unambiguously indicated its intent to reject the more modern (and flexible) 'significant contacts' analysis . . . choosing instead to adhere to the traditional rule of *lex loci contractus*."); *see also Clarendon Am. Ins. Co. v. Miami River Club, Inc.*, 417 F. Supp. 2d 1309, 1317 (S.D. Fla. 2006)).

Here, § 4.4.3 of the General Conditions of the Contract (entitled "Governing Law and Venue") states that the "substantive and procedural laws of the State of Florida shall apply in all respects to any and all disputes arising from or relating to interpretation or performance of this Contract, except as otherwise specifically provided herein." [ECF No 43-2, p. 46]. Therefore, Florida law controls the Court's analysis. *See IAG Engine Ctr. Corp. v. Cagney Glob. Logistics Inc.*, 501 F. Supp. 3d 1287, 1296 (S.D. Fla. 2020) (Ruiz, J.) (holding that Florida law governed an assignment pursuant to the applicable choice-of-law provision).

## A.    Whether Defendant Should be Excluded from Offering Evidence Regarding Alleged "Construction Industry" Understandings

Plaintiff notes that Defendant must justify its "unilateral termination of the Agreement" by, among other requirements, establishing that the "entire Work" was suspended for 120 days before February 2, 2022. [ECF No. 43, p. 3]. Plaintiff contends that Defendant's argument over the meaning behind the term "Work" in the Agreement is an effort "to avoid the inconvenient fact that [Defendant]" in fact performed work under the Agreement during those 120 days. Defendant's CEO, Michael Taylor, provided an affidavit that Defendant used as support for its Motion for Summary Judgment. [ECF No. 29-2].

Likewise, Plaintiff argues, in its Reply, that Taylor's "[p]roposed testimony is also a transparent attempt to distract from the express definition of the term "Work" under the Agreement." [ECF No. 55, p. 5].

Plaintiff seeks to exclude Taylor's testimony because, it argues: (1) the affidavit is "undisclosed expert testimony"; (2) Taylor's testimony ignores and contradicts the Agreement; and (3) it is inadmissible under the Federal Rules of Evidence.[4]

Plaintiff states that Taylor is actually an undisclosed expert whose testimony will be based on "his alleged experience in the construction industry." [ECF No. 55]. Plaintiff relied

---

[4]    Plaintiff mentions that Defendant filed Taylor's affidavit after the close of discovery but does not explain whether the timing of the affidavit caused it harm. [ECF No. 43, p. 3]. In Defendant's response, it mentions that Plaintiff took Taylor's deposition. [ECF No. 49, p. 3].

on two cases,[5] but the cases are inapplicable because they involve witnesses whom the opposing party *deemed* as experts. Here, Defendant never labeled Taylor as an "expert" witness, and, in its response, states[6] that it "does not intent [sic] to seek to qualify Mr. Taylor as an expert witness." [ECF No. 49, p. 3]. Specifically, Defendant explains that its "intention [is] to rely on Mr. Taylor's *non-*expert testimony." [ECF No. 49, p. 4 (emphasis added)]. Defendant argues that Taylor "possess[es] firsthand knowledge of the provisions and definitions within the Contract, and his testimony was offered as a factual account of how 'Work' was defined in the Contract, which also happens to align with how the term 'work' is defined and understood in the construction industry." *Id*. at 3–4.

But Taylor's testimony is based on his specialized knowledge from experience in the construction industry and as Defendant's CEO. Plaintiff argues that Taylor's testimony is therefore impermissible because: (1) his specialized knowledge had to be identified, (2) he had to be disclosed as an expert, and (3) he cannot fit into the category of a lay witness who can provide opinion testimony. [ECF No. 55]. As outlined below, a lay witness may provide opinion testimony under Federal Rule of Evidence 701 -- but only if it is "not based on scientific, technical or other specialized knowledge within the scope of Rule 702." (emphasis added).

---

[5]     The two cases are *Dixon v. United States*, 15-23502-CIV, 2017 WL 5643319, at *1 (S.D. Fla. Mar. 1, 2017) and *MKT Reps S.A. DE C.V. v. Standard Chartered Bank Int'l (Americas) Ltd.*, 10-22963-CIV, 2011 WL 13099888, at *5 (S.D. Fla. Nov. 22, 2011).

[6]     The Undersigned notes that Defendant's response is not based on any supporting caselaw -- and is solely based on attorney rhetoric, with cites to the Agreement.

Under Federal Rule of Civil Procedure 26(a)(2)(A), a party must disclose the identity of anyone who may serve as an expert witness. In *Pac. Atl. Lines, Inc. v. Jah*, the district court dealt with a similar issue as the one Plaintiff raises here. No. 1:09-CV-0625-SCJ, 2011 WL 13176018, at *2 (N.D. Ga. Sept. 27, 2011). There, the defendant moved to exclude the plaintiff's CEO from testifying about lost profits because: "(1) lost profits projections require scientific, technical, or other specialized knowledge beyond the scope of her lay witness opinion under Rule 701, (2) she is not an expert witness under Rule 702, and (3) Rule 403 bars her testimony as the probative value of her 'shoddy calculations,' [ ], is substantially outweighed by the likelihood that it will mislead the jury, cause confusion of the issue and unfair prejudice." *Id*.

The district court discussed the following:

Rule 701 permits lay testimony in the form of opinions or inferences if that testimony is "(a) rationally based on the perception of the witness, (b) helpful to . . . the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." In addressing the 2000 amendment to Rule 701, the Eleventh Circuit notes that "the addition of subsection (c) was an attempt 'to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.'" *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1222 (11th Cir. 2003) (quoting Fed. R. Evid. 701 Advisory Committee Notes (2000 amend.)).

However, binding precedent has recognized generally that business owners and officers may testify as lay witnesses "based upon their particularized knowledge garnered from years of experience within the field" and has specifically allowed non-expert testimony on the issue of lost profits. *Tampa Bay*, 320 F.3d at 1223; *Malcolm v. Marathon Oil Co.*, 642 F.2d 845, 864 (5th Cir.

> 1981)[7] (holding that the plaintiff presented sufficient evidence to create a jury issue as to the amount of lost profits by proffering a record of past profit and testimony regarding its accuracy, and concluding that a "non-expert's testimony regarding the past sales volume and profit margin may be used to measure damages").

*Id*. (footnote reworded). The *Jah* Court concluded that, under Rule 701, the plaintiff could "establish damages in the form of lost profits through the testimony and calculations of its CEO to the extent those calculations are based on [the CEO's] particularized knowledge and do not require the presentation of scientific, technical, or other specialized information before the jury." *Id*.

In *Tampa Bay*, the Eleventh Circuit affirmed the district court's decision allowing lay witnesses to testify whether charges were either fair and reasonable or in line with similar services provided by similar operations because they testified based on "particularized knowledge garnered from years of experience within the field." 320 F.3d at 1223. (citing *Agro Air Assoc.'s, Inc. v. Houston Cas. Co.*, 128 F.3d 1452 (11th Cir. 1997) (holding that testimony of company's employees and officers relating to the ultimate issue in the case was admissible under Rule 701 because the appellant had the opportunity to cross-examine the witnesses and so any objection to the testimony went to its weight not to its admissibility)).

If Taylor's testimony does not include any "scientific, technical or other specialized knowledge within the scope of" expert testimony and the contract is ambiguous, then (without considering other factors) he might be able to testify as a lay witness and provide

---

[7]     In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

opinion testimony about the terms of the Agreement. *See Adapt Programs, LLC v. Veritable Billing Servs., LLC*, No. 20-25161-CV, 2023 WL 3778251, at *6 (S.D. Fla. Mar. 27, 2023) (*citing* Fed. R. Evid. 701(c); *Instant One Media, Inc. v. EzFauxDecor, LLC*, No. 22-11374, 2023 WL 2422196, at *5–6 (11th Cir. Mar. 9, 2023) (discussing how the plaintiff failed at trial to "provide information or data sufficient to enable the trier of fact to estimate the amount of loss with reasonable certainty" in a breach of contract case, and the limitation of recovery to actual expenses incurred)).

On the other hand, if Taylor's opinions are actually disguised expert testimony because they are based on scientific, technical, or other specialized knowledge, then they are inadmissible because Defendant never made an expert witness disclosure about his opinions.

The Undersigned is not convinced that Taylor's opinions are permissible under Rule 701. They appear to be based on his more than 40 years of experience in the construction industry, which sounds like the type of specialized knowledge which precludes him from offering lay opinion testimony under Rule 701. In addition, courts often permit *experts* to provide opinion testimony about an industry's understanding of terms -- which undermines the argument that a *lay* witness could provide opinion testimony about a term's meaning in a particular industry.[8] *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 878 (5th Cir. 2013)

---

[8]      Federal Rule of Evidence 701 *prevents* opinion testimony by lay witnesses if it is based on "scientific, technical or other specialized knowledge," while Rule 702 *permits* an expert to testify in the form of an opinion if the witness is qualified by "knowledge, skill, experience, training or education" **and** if it is more likely than not that the expert's scientific,

(permitting disclosed **expert** testimony regarding "the software industry's understanding of [document] terms"); *Cage v. City of Chicago*, 979 F. Supp. 2d 787, 803 (N.D. Ill. 2013) ("[A]n **expert** witness may opine on the accepted meaning (or lack thereof) of a word or phrase within a particular industry based [sic] his or her experience and training." (emphasis added)).

So Taylor's proposed testimony about how the construction industry interprets the term "Work" is most likely not a lay opinion permissible under Rule 701. Instead, it is probably an expert opinion which could have been admissible under Rule 702 if Defendant had made the required, timely disclosure (which it did not). The Undersigned uses the terms "most likely" and "probably" because I am *strongly* inclined to conclude that the testimony is actually disguised expert opinion testimony (i.e., not lay witness opinion testimony) but have not *definitively* made that conclusion. However, this lack of certainty is ultimately academic because the parol evidence rule prevents the proposed testimony from being admitted.

Plaintiff argues that "testimony regarding the construction industry's alleged understanding of the word 'Work' should be excluded because it ignores and contradicts the express terms of the Agreement." [ECF No. 43, p. 4]. Defendant states that Taylor's understanding of how "Work" is defined aligns with how it is "defined and understood in the construction industry." [ECF No. 49, p. 4]. Plaintiff contends that Defendant should be

---

technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."

precluded from offering parol evidence because § 1.1.3 is unambiguous and Defendant does not allege that any ambiguity exists. The Undersigned agrees.

"Contract interpretation begins with a review of the plain language of the agreement because the contract language is the best evidence of the parties' intent at the time of the execution of the contract." *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. 1st DCA 2009) (citing *Royal Oak Landing Homeowner's Ass'n, Inc. v. Pelletier*, 620 So. 2d 786, 788 (Fla. 4th DCA 1993)). "When the terms of a contract are ambiguous, parol evidence is admissible to 'explain, clarify or elucidate' the ambiguous terms. However, a trial court should not admit parol evidence until it first determines that the terms of a contract are ambiguous." *Id.* at 350–51 (citations omitted). "In the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." *Acceleration Nat. Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc.*, 541 So. 2d 738, 739 (Fla. 1st DCA 1989).

The parties' contract can be broken into two parts: the General Conditions and the Agreement. The Agreement's Article 2 § 2.1 (entitled The Work of This Contract) states "[t]he Work of the Contract *generally* consists of construction of a new [six]-story assisted living facility with a basement parking garage." [ECF No. 43-2, p. 2] (emphasis added). However, General Conditions Article 1 § 1.1.3 (entitled "The Work") states "[t]he term 'Work' *means* the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The

11

Work may constitute the whole or part of the Project." *Id*. at 18 (emphasis added). The Court

notes that § 1.1.3 falls within the General Conditions' section labeled **"Basic Definitions"**.

(emphasis supplied).

In defining the term "Work", Plaintiff looks to the language from § 1.1.3, while

Defendant refers to § 2.1. Plaintiff contends that the § 1.1.3 language defines "Work" and is

broader than the "alleged 'construction industry' understanding referenced" by Taylor in his

affidavit. [ECF No. 43-1, p. 9]. Defendant argues that because Plaintiff disagrees with

Defendant's chosen interpretation, that the parties should refer to § 14.2 from the

Agreement. Section 14.2 states, "[i]n the event of any conflict, ambiguity, or inconsistency

among any provisions within the Contract Documents, the following order of precedence

shall apply: Change Order; Assumptions, Exclusions and Clarifications dated 06.11.21;

**Contract; General Conditions**; Plans; Specifications." [ECF No. 43-2 p. 15 (emphasis

added)]. Defendant concludes that "Work" under § 2.1 therefore trumps Plaintiff's reliance

on § 1.1.3.

As previously mentioned, **neither party has argued that the term "Work" is**

**ambiguous**. In *Steel Supplements, Inc. v. Blitz NV, LLC*, the district court faced a similar

situation. No. 8:20-CV-2971-WFJ-TGW, 2023 WL 145322, at *3 (M.D. Fla. Jan. 10, 2023).

There, the parties disputed what the contract provided for regarding consideration (because

of their opposing interpretations of one of the contract's sections). *Id*. Section 1.6, the section

at issue, defined "Gross Sales" as "all sales derived by [the plaintiff] from all sources,

including but not limited, to the sale of products, services and related items." *Id*. The

defendant interpreted section 1.6 to mean that "Gross Sales" included all sales "before discounts, returns, and allowances . . . from 'all sources' including 'services.'" *Id*. (internal citation omitted). However, the plaintiff interpreted it to "only include sales revenue in the form of 'the total amount of value in money received for goods sold or services performed[.]'".

The district court provided the following analysis:

> As an initial matter, the Agreement's terms are **unambiguous.** It is worth reiterating that Section 1.6 **explicitly defines** "Gross Sales" as "all sales derived by [the plaintiff] from all sources, including but not limited, to the sale of products, services and related items." Dkt. S-16 § 1.6. Section 4 then provides in pertinent part that "[the plaintiff] shall pay [the defendant] a 10% commission on the Gross Sales of [the plaintiff] beginning with sales as of April 1, 2017." *Id*. § 4. **This language is not rendered ambiguous merely because the parties offer different interpretations of it**. *See BKD Twenty-One Mgmt. Co. v. Delsordo*, 127 So. 3d 527, 530 (Fla. 4th DCA 2012) (finding that "a true ambiguity does not exist merely because a contract can possibly be interpreted in more than one manner"). Nor is it rendered ambiguous considering it requires analysis. *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010) (finding that "[a] provision is not ambiguous simply because it is complex or requires analysis").
>
> That said, neither party offers the one construction that Section 1.6 is reasonably susceptible to based on the four corners of the Agreement. *See BKD*, 127 So. 3d at 530 (finding that "contractual language is only ambiguous if it is susceptible to more than one *reasonable* interpretation"); *see also* [*Fecteau v. Se. Bank, N.A.*, 585 So. 2d 1005, 1007 (Fla. 4th DCA 1991)] (finding that, where the terms of a contract are unambiguous, "the parties' intent must be discerned from the four corners of the document").

*Id*. at *3-4 (emphasis added). The district court found that the plaintiff's interpretation "unreasonably narrowed" the meaning of "Gross Sales", and that defendant's interpretation "unreasonably" expanded the meaning of "Gross Sales." *Id*. at *4. In analyzing the respective

interpretations, the district court looked to other sections in the contract, as well as to Black's Law Dictionary.

Here, the parties dispute what "Work" means. Upon a review of the contract, the Court finds that § 1.1.3[9] explicitly provides the definition while § 2.1[10] provides a general description of what "Work" could include. Defendant's argument that "'Work' is defined" in § 2.1 is incorrect because § 2.1 *describes* what the "Work of the Contract **generally consists of**" but does not *define* it. [ECF No. 49, p. 4 (emphasis added)]. It is a generic, overall statement about the nature of the project. However, unlike § 2.1, § 1.1.3 (1) individually addresses the term "Work" (as compared to "the Work of the Contract"); (2) is a **subsection** within the "Basic **Definitions**" section; and (3) provides details regarding what it includes (as compared to a generalization of what it consists of).

Additionally, Defendant, in effect, admitted that services are encompassed by the definition of "Work" because Defendant billed Plaintiff for services, such as preparing and submitting shop drawings. Therefore, the Court concludes that the contract is *not* ambiguous and that "Work" is clearly defined, as Plaintiff states, in § 1.1.3.

---

[9]     Article 1 § 1.1.3 states "The term 'Work' means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and **services** provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or part of the Project." *Id*. at 18. (emphasis supplied).

[10]     Article 2 § 2.1 states, "The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others. The Work of the Contract generally consists of construction of a new six-story assisted living facility with a basement parking garage." [ECF No. 43-2, p. 2].

The parol evidence rule provides that a written document intended by the parties to be the final embodiment of their agreement may not be contradicted, modified or varied by parol evidence. *See The Florida Bar v. Frederick,* 756 So. 2d 79, 84–85 (Fla. 2000). "Generally, the party seeking to introduce parol evidence must establish that the document is ambiguous and in need of interpretation." *LSQ Funding Grp., L.C. v. EDS Field Servs.,* 879 F. Supp. 2d 1320, 1328 (M.D. Fla. 2012) (citing *King v. Bray,* 867 So. 2d 1224, 1226 (Fla. 5th DCA 2004)). Taylor's testimony regarding how "Work" was defined in the Contract and its alignment with construction industry understandings is an example of impermissible parol evidence because it seeks to contradict or modify the final embodiment of the contract.

As previously mentioned, neither party made any mention or comment stating that the contract or the term "Work" was ambiguous. Therefore, the Undersigned **grants** this portion of Plaintiff's motion because the contract is unambiguous. Without a need for interpretation, the parol evidence rule bars Taylor's opinion testimony regarding the term "Work" and its alignment with construction industry "understandings."[11]

**B.      Whether Defendant Should be Excluded From Offering Evidence Regarding the Date of the Building Permit's Issuance**

---

[11]       Taylor's affidavit does not cite books, treatises, articles, journals, studies or case law. He merely provides his opinion about what he believes is the industry understanding of a word (which is already defined differently in the contract). Moreover, Taylor's affidavit does not say that the parties discussed the meaning of the term "Work" during contract negotiations, nor does he say that earlier drafts contained a different definition than the one used in the contract. And he does not conclude that the contractual definition of "Work" is ambiguous.

Plaintiff argues that the date of the building permit's issuance is irrelevant to whether Defendant possessed the authority to unilaterally terminate the contract because the contract was terminated on February 2, 2022 and the building permit was issued in November 2022. [ECF No. 43, p. 6]. Defendant responded that the issuance date is relevant to "the issue of whether [Defendant] properly terminated the Contract" because it was Plaintiff's obligation to obtain the permit and because Defendant possessed the right to terminate the Contract. [ECF No. 49, p. 6]. Defendant contends that the issue date and Plaintiff's failure to timely obtain the permit is evidence "of its material prior breach." *Id.* at 8.

Plaintiff states that "the issue in dispute is whether [Defendant] was permitted to abandon the Project" in February 2022. [ECF No. 55, p. 7]. Plaintiff contends that "evidence regarding ***when*** the building permit was issued ***after*** [Defendant] abandoned the Project is irrelevant to whether [Defendant] possessed the right to terminate the Agreement on February 2, 2022, and would be offered only to distract from this issue in dispute." *Id.*

Plaintiff states that the issuance date is also irrelevant to its damages because the damages were calculated in July 2022, *before* the issuance date.[12] Finally, Plaintiff argues that the probative value of the "building permit's eventual issuance date (if any) is substantially

---

[12]    The issuance date is additionally irrelevant in calculating liquidated damages because the calculation involves the difference in time between the notice to proceed date and the projected completion date from the original Contract with Defendant and the replacement contract with Winmar. [ECF No. 55, pp. 6-8]. When the permit was issued was not referenced or taken into consideration when calculating the damages. *Id.*

outweighed by the tendency of this information to unfairly prejudice" Plaintiff or confuse the issues. [ECF No. 43, p. 7]. Defendant states the issuance date is relevant to damages because the delay in obtaining the permit added costs to the project.[13] [ECF No. 49, p. 7].

The Undersigned agrees with Plaintiff.

Defendant's attempt to weaponize the issuance date against Plaintiff is seemingly an attempt to confuse the Court and jury with issues not in dispute, especially when Defendant was *also* responsible for the delay. Such evidence or argument is not relevant under Fed. R. Evid. 401 and 402, and must additionally be excluded under 403 as it is more unfairly prejudicial than probative, would confuse the issues, mislead the jury, cause undue delay, and waste time. *See J & M Distrib., Inc. v. Hearth & Home Techs., Inc.*, No. 13-CV-72 SRN/TNL, 2015 WL 137616, at *8 (D. Minn. Jan. 9, 2015) (testimony regarding a potential future termination of the plaintiff was "prejudicial and confusing to the jury" and whether the defendant could have terminated plaintiff in the future "does not relate" to the defendant's earlier termination of plaintiff).

Therefore, Plaintiff's request is **granted** and any testimony or evidence regarding the building permit's issuance date is excluded as irrelevant because the issuance date (1) occurred *after* the breach, and (2) was not considered when calculating the damages.

## C.     Whether Defendant Should be Precluded From Alleging that Plaintiff Breached the Agreement

---

[13]     Defendant did not respond to Plaintiff's argument that the issuance date would distract the Court and the jury from the disputed issue.

In its first set of interrogatories, Plaintiff requested Defendant to "[i]dentify all breaches of the Contract that You allege [Plaintiff] committed, and state the factual bases as to how [Plaintiff] allegedly breached the Contract, when [Plaintiff] allegedly breached the Contract, and how those alleged breaches affected Your performance." [ECF No. 43-5, pp. 2–3 (Int. 7)]. Defendant responded with "None." *Id*. Defendant never supplemented its interrogatory answer.

Plaintiff argues that Defendant should be barred from alleging that Plaintiff breached the Agreement because of that interrogatory answer and because it never demonstrated that its failure to supplement the answer was substantially justified or harmless. [ECF No. 43-1, p. 12]. Defendant concedes that it did not include any language related to Plaintiff's breach until after its Motion to Dismiss was denied, forcing Defendant to file its Answer (and affirmative defenses). [ECF No. 49, p. 8]. Defendant's fifth and sixth affirmative defenses asserted that Plaintiff's "breach of contract claims were barred based upon its prior material breaches[.]" *Id*.[14]

---

[14]   Defendant's fifth and sixth affirmative defenses are:

[Defendant] states as its fifth affirmative defense that Plaintiff's Breach of Contract claims are barred based upon its **prior breach** in **failing to issue the Notice to Proceed** to [Defendant] in December 2021, or at any time thereafter.

[Defendant] states as its sixth affirmative defense that Plaintiff's Breach of Contract claims are barred based upon its **prior breach** in **failing to obtain the Building Permit.**

[ECF No. 21, p. 17 (emphasis added)].

18

Defendant argues that it provided the "none" response when it had *not yet* formulated allegations of Plaintiff's breaches, and that its Answer to Plaintiff's Complaint had not been filed due to a pending Motion to Dismiss. *Id.*

The Eleventh Circuit has held that Rule 26(e) requires a party to:

> timely supplement its interrogatory response if it discovers that the response is materially "incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). And Rule 37(c) outlines the consequences of a party's failure to do so: that party is not allowed to use the additional or corrective "information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Other consequences include paying the reasonable expenses caused by the party's failure. *Id.*

*Levin v. Palm Beach Cnty.,* 752 F. App'x 734, 737 (11th Cir. 2018).

Federal Rule of Civil Procedure 26(e) provides that a party has a **continuing** duty to supplement or correct a response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Acafrao v. U.S. Century Bank,* No. 09-21695-CIV, 2010 WL 4261435, at *2 (S.D. Fla. Aug. 4, 2010) (quoting Fed. R. Civ. P. 26(e)(1)(A)). "It is well settled that Fed. R. Civ .P. 37(c)(1) mandates that a trial court sanction a party for discovery violations in connection with Rule 26 [by excluding the pertinent evidence], unless the violation was harmless or substantially justified." *Young v. Lexington Ins. Co.,* 269 F.R.D. 692, 693 (S.D. Fla. 2010) (quoting *Saewitz v. Lexington Ins. Co.,* No. 02-23248-CIV, 2003 U.S. Dist. LEXIS 27568, at *5 (S.D. Fla. Oct. 21, 2003)); *see also* Fed. R. Civ. P. 37(c)(1), Advisory

Committee Note, 1993 Amendments; *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998) ("sanction of exclusion is automatic and mandatory" unless non-movant can show the violation was justified or harmless).

Federal Rule of Civil Procedure 33 governs interrogatories. An interrogatory's scope is defined as, "any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). "The interrogatories **must** be answered: (A) by the party to whom they are directed; or (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party." *Id.* at (b)(1) (emphasis added).

"Each interrogatory **must**, to the extent it is not objected to, be answered separately and fully in writing **under oath**." *Id.* at (b)(3) (emphasis added). Defendant argues that it has maintained its affirmative defenses of prior breach. Plaintiff emphasizes that affirmative defenses are not evidence. Defendant's responses to Plaintiff's interrogatories were under oath, unlike its affirmative defenses.

There is no doubt that Defendant failed to supplement its interrogatory answer to provide information about its position that Plaintiff breached the contract. Therefore, it cannot assert that prior breach position at trial -- unless the failure was substantially justified or harmless.

To determine whether a nondisclosure or delayed disclosure was substantially justified or harmless, the Court considers: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to

which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. *Grigorian v. FCA US, LLC,* No. 18-24364-CIV, 2019 WL 2754154, at *5 (S.D. Fla. July 2, 2019), *report and recommendation adopted* No. 18-24364-CIV, 2019 WL 5260124 (S.D. Fla. Sept. 16, 2019) (internal quotations omitted). *See also RR Restoration, LLC v. Empire Indem. Ins. Co.,* No. 2:21-cv-866, 2023 WL 4763976 (M.D. Fla. July 26, 2013), at *5-6 (finding omission in disclosure to be harmless). *See also Henderson v. Ford Motor Co.,* 72 F.4th 1237, 1243 (11th Cir. 2023) (noting that district court has "considerable discretion" in determining whether exclusion is proper").

Under the circumstances here, the omission was harmless. Defendant disclosed its prior breach position in its affirmative defenses. Plaintiff could easily have probed those two related affirmative defenses at the Rule 30(b)(6) deposition of Defendant's corporate representative. In fact, its "Matters Subject to Examination" section of its Rule 30(b)(6) Notice announces, as the very first topic, "Factual bases concerning Current Builders' Answer and Affirmative Defenses to the Amended Complaint."

For reasons which Plaintiff has never disclosed, it never followed through with questions about the first topic listed and never asked Defendant's representative questions about the facts underlying Defendant's "But-Plaintiff-Committed-A-Prior-Breach-By-Failing-to-Issue-the Notice-to-Proceed" defense. Had Plaintiff done so, it would have obtained additional information.

"Prejudice generally occurs when late disclosure **deprives** the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (emphasis supplied). "Failure to timely make the required expert witness disclosures is harmless when the party entitled to the disclosure suffers no prejudice." *Kleiman v. Wright*, No. 18-CV-80176, 2020 WL 6729362, at *5 (S.D. Fla. Nov. 16, 2020). *See also MacuHealth, LP v.Vision Elements, Inc.*, No. 22-cv-199, 2023 WL 3863341, at *6 (M.D. Fla. June 7, 2023) (denying motion to strike expert's supplemental report because party waited until a month after discovery closed to raise the issue of prejudice).

So, yes, Plaintiff is prejudiced by its lack of more-specific information about the so-called prior breach theory, but its prejudice was self-inflicted (by its inexplicable failure to ask questions about two related affirmative defenses expressly disclosed in Defendant's Answer). Plaintiff was not **deprived** of the opportunity to obtain information about Defendant's position on prior breach. It simply *chose* to not ask questions at the deposition even though it listed the topic as the first one on its list. Therefore, Defendant's failure to supplement its interrogatory answer was harmless, thereby eliminating the potential sanction of precluding Defendant from arguing this position. *See generally Magnolia Fin. Grp. v. Antos*, No. 15-7144, 2018 WL 11415082 (E.D. La. Mar. 9, 2018) (denying motion to exclude evidence based on failure to specifically supplement interrogatory answer about what misrepresentations the defendants made).

The Undersigned **denies** this portion of Plaintiff's motion.

### III.   Conclusion

For the reasons stated above, the Undersigned **grants in part and denies in part** Plaintiff's motion. Defendant is barred from: (1) offering evidence regarding alleged construction industry understandings because of the parol evidence rule and Defendant's failure to provide the necessary disclosure under the federal rules of evidence and civil procedure; and (2) offering evidence regarding the date of the building permit's issuance because it is irrelevant. But I deny the motion as to Defendant's affirmative defenses concerning prior breach by Plaintiff.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on October 12, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All Counsel of Record